May it please the court, my name is David Raganese on behalf of the estate of Frank P. Lugano. The estate requests two minutes of reserved time. That is granted. Also, would you mind pushing the, thank you. As the court is aware, the standard of review on this appeal is plenary, which means the estate will finally get the opportunity for a federal court to review its complaint with the assumption that the allegations are true. The following allegations. The chief detective of the Burlington County Prosecutor's Office, Michael Mordaga, attempted to use seized funds and promises of leniency in exchange for the payment by Frank Lugano of $25,000 to a third party. And when Mr. Lugano refused, Mr. Mordaga and or other BCPO personnel acting in his direction, disclosed Mr. Lugano as a confidential informant to known members of organized crime. Where is the allegation that there was? You said it was either Mr. Mordaga and or BCPO members. And then you said at the direction of Mordaga. Where does that appear? I'll direct the court's attention to the. I looked at your brief. You said Mordaga intentionally disclosed to no members of organized crime that Lugano was served as an informant. And you cited 32A of the record. And I go to 32A of the record, which is the complaint. And in the complaint, you say Bergen County Prosecutor's Office personnel thereafter disclosed to alleged members of traditional organized crime. I don't see anything that says Mordaga did it. The inference is that based upon Mordaga's knowledge of Mr. Lugano as a confidential informant, it was at his direction. In addition, if the court considers that absence of an allegation to be deficient, then the proper remedy would be dismissal without prejudice and leave to amend, not dismissal with prejudice. Well, there was no finding by the district court of futility, right? Right. So I take it your position here is if you give me nothing else, you got to give me the ability to amend my complaint. That's our last position, Judge Greenaway, yes. Our first is that these two district orders should be reversed and the defendants should be ordered to answer the complaint within 20 days. That's our first position. Well, I guess Judge VanNesky's question and mine to follow up is, even if we're looking just at your allegations, aren't the allegations deficient so that if you want us to consider, you know, to reach state-created danger? I respectfully disagree. Okay. Well, if I could just add something to that. I mean, it's tough. It's an unknown officer, unknown date, in an unknown manner, unknown recipient of information from organized crime. I mean, it doesn't give us a whole lot to go on. No, but you can assume that those facts are true. But there's nothing but the conclusory assertion that there was a disclosure. That's all you say, and we don't know when, to whom, nothing. But the net factors wouldn't require temporal proximity. We wouldn't have to allege time of disclosure. We simply would allege at the pleading stage that the disclosure was made and the murder followed, and that the disclosure was motivated by personal gain. That's difficult, right? Because, I mean, where can we read this complaint even as the alleged personal gain by Morgata? Yes, his business relationship that preceded the December 2004 arrest, his personal relationship with Mr. Logano that preceded the December 2004 arrest, and the subsequent souring of that relationship and Mr. Logano's refusal to make the payment as demanded by Mr. Mordaga in exchange for funds that were seized pursuant to a warrant. Those allegations on their face state a constitutional claim. What's the clearly established right? To be free from state-created danger. It's not the narrow right that a confidential informant has to be free. Why make the distinction, or how could the Constitution make the distinction between a citizen and a confidential informant? Both are entitled to be free from state-created danger. Moreover, I think the standard that should be applied in evaluating the qualified immunity question is the one employed by HOPE, in HOPE by the court, HOPE v. Pelzer. In those instances, we have general legal principles that apply with obvious clarity, with obvious clarity to the facts of the case. That's this, this case. Objective reasonableness under the qualified immunity analysis, found in Sherwood v. Mulvihill and Sharar v. Felsing. Employing the levers of law enforcement authority for personal gain can never be objectively reasonable. So your argument is that we need not go any more specific than just state-created danger. I mean, there's no, I'm not aware of a Third Circuit case or a Supreme Court case that deals with particular facts that are here. You're saying that's not necessary. That's not necessary, but there is materially similar precedent. It starts with G69. The only distinction between G69 in this case is that the confidential informant in G69 was in custody. It proceeds into Cherry v. Philadelphia. Now, admittedly. But isn't that a big difference when they're in custody, that that establishes the requisite special relationship? It might be for prong one of the qualified immunity analysis, you know, after Pearson. But under prong two, the clearly established analysis, it's too narrow. It's too narrow to look at the right that way. You're not relying on special relationship, are you? Not the first exception to the Shaney principles, no. Not at all. The defendants cite in their brief Summar v. Bennett in the Sixth Circuit for the proposition that, actually the qualified immunity argument as well as the constitutional right position, that Summar represents the proposition that there is no right for confidential informants to be free from state-created danger. That case is distinguishable from this one. Number one, the informant in that case volunteered to be an informant and agreed. This is most important. He agreed to the disclosure of his identity. Similarly, Wright v. Evans, a District of New Jersey case cited by the defendants. The obvious distinction to that case is that there was no injury, no harm. It was important to Judge Simandl in his opinion that there was no harm in that case. Here, the harm is obvious. How about Gatlin v. Green, the District of Minnesota case? It's a 2002. I don't mean to just pull one out. If you don't know. I don't know. I'm not clear with the facts of the case. Primarily because the analysis by the district court was not concerned with whether the cause of action, whether the complaint states a cause of action for state-created danger. Instead, the district court skipped to the second prong of the qualified immunity analysis and went directly to clearly established. So the cases that were dealt with by the district court involved primarily those cases within this circuit, with the exception of the Sixth Circuit. I wouldn't make a point about the 11th Amendment immunity that the district court found applied to the Burlington County Prosecutor's Office. Is your position as simple as she didn't analyze the Fitchick factors, so please send it back? Exactly. But send it back for a developed record that only discovery can provide. Not send it back for a small proceeding, but let's discover those three Fitchick factors. Because right now they're in doubt. We doubt, the estate doubts, that the state treasury will be at risk in light of this lawsuit. Because the Attorney General provides a defense and indemnification based on what I'll call a statutory reservation of rights. If they find out there's true malfeasance here, their hands are going to be washed clean from any indemnification obligation. There's not a clear record presently, and there couldn't be one without discovery, to develop another factor, Fitchick, which is whether the BCPO was operating with autonomy. The record we provided suggests that they were in this particular investigation. I'm sorry, the what that you provided? The record. Oh, the record. The record, sorry. And then finally, with respect to statute of limitations, the court found that the third count was barred by the statute of limitations without considering the argument that the BCPO's concealment of information in the application for its telephonic interference warrants did not equitably toll the statute. Well, you know, I have a hard time with that because you're claiming that they stole $50,000 or stole some of money, and Ligano didn't know they stole it? I mean, doesn't the cause of action for a wrongful search or wrongful seizure accrue at the time of injury? Which is when it occurs. But in this instance, we're not aware of the, the estate is not aware of the injury. Well, if the statute expired before Ligano passed away, it expired no matter what. Well, the statute didn't expire because it's being told, and the evidence of the reason for it is told. Ligano didn't know about the search in 2004? He didn't know that the wiretap that led to the warrant for his arrest and the search and seizure of his property was tainted from the beginning by the BCPO's failure to disclose information. When does the cause of action accrue? When the claim is complete. Now, when the injury occurs? How about when you substitute it into the forfeiture action? When the complaint, when the answer is amended. Yeah. That precedes the Sweeney complaint, the James Sweeney complaint, which is only at that point that the estate realizes that there are serious malfeasance occurring, in particular with regard to Mr. Ligano. No, no. Best case scenario is we begin at the Sweeney complaint. I get that. The question is, why shouldn't knowledge be imputed before that? Obviously, an earlier time would be when Judge Van Aske is suggesting. An interim time would be when the estate was substituted into the forfeiture action, which I guess is the best time for you, yes? No, the best time is the Sweeney complaint. Right. But everyone knew the dollar figure. I mean, the public would know, 2064, 428, you know, all the way back. I mean, anybody, including the deceased, could just have done the math and said, hey, that's not the right amount of money. They don't, the estate does not know the amount taken because no inventory was provided at the time of seizure. The estate does not know until the Sweeney complaint that Mr. Mordaga is using the money he seized to make, to force Mr. Ligano to make payments to a third party. We're going to hear you on rebuttal. Thank you. Good morning. My name is Brian Flanagan. I'm Deputy Attorney General. I'm representing the Burbank County Prosecutor's Office and Michael Mordaga. In this case, listening to my friend or colleague argue this case, he seems to basically want this court to completely ignore the holding, the United States Supreme Court holding in Iqbal and Tumley, by just basically accepting everything they put in the complaint as true. Let's say that that's so. Wasn't the district court obligated either to make a futility finding or to dismiss without prejudice and give them an opportunity to meet Tumley and Iqbal, as you say? First of all- And isn't that a basis for us to remand? I'm going to address the futility argument, so I see where Your Honor is going. I'm not going. I'm asking questions. Well, line of questioning, rather. I'm sorry. I don't want to presuppose anything. The district court was obligated under Iqbal to do an analysis of the complaint, separate the conclusions and the facts, and to say what ones can be believed and be lied upon and what's not. That's what the district court did in this case. And the district judge came to a conclusion that there was just bare-faced, unsupported conclusions about the organized crime connection and the disclosure. And that's one of the reasons why she dismissed the complaint. Now you're saying that she should have made the finding that it was futile to amend. Number one, this was the first amended complaint, so the complaint was already amended at one time or at all. Yeah, but look, if she doesn't, what are we supposed to do, get in her mind? Well, this is de novo, so you can analyze the complaint and what's now being presented to the court at this time. They did so in the last part of their brief, and they basically are relying on a newspaper article. They say, but for this newspaper, look at the new information in this newspaper article that we could go to amend the complaint. But if you look at the newspaper article, first of all, the timing is incorrect, in that the amended initial complaint. Are you talking about count three now? No, no, no. No, I'm talking about the final count in their brief where they say, we should be allowed to amend their complaint because we have this new information. The newspaper article was published in the newspaper on December 2, 2012. The first amended complaint was not filed until December 12, 2012. So they already had that, or they could have had that information, and they could have put that in the amended complaint. They chose not to. Now, you have to look at the allegations or the information that they could put in that complaint. Where it goes to the issue of disclosure or organized crime or the killing, there's nothing in that whatsoever that could bolster that complaint to alleviate the Iqbal problems. Who disclosed it? What was disclosed? Where it was disclosed? When it was disclosed? The circumstances of disclosure. None of that would be found in that newspaper article. So I submit, looking at what they presented to this court now, that how they would amend, it would be futile. Now, we also talk about, I think – How would they get that information? Their allegation is there's a police officer who is engaged in the worst kind of malfeasance. How much of that could they get before discovery? Well, the – I don't know, but you're asking me to deal in speculation. No, I mean, it's like in some of the employment cases we get. There's certain information that you're not going to get until you get an employer on a debt. Well, the certain information, I bring up McIntyre cases, the district court up in Massachusetts involving Whitey Bulger and the FBI agent Connolly, where Connolly was actually part of the criminal conspiracy, and it was a direct but-for connection between Connolly giving Whitey Bulger, who he knows will kill the informant, the informant's name and location. I mean, so it is possible to do it, certainly if you uncover facts or at least supportable facts. In this case, we have all conclusions, and none of those conclusions based upon what they're putting forward now could ever make that a plausible complaint to go forward. That's my point. Now, also, too, one of your honors mentioned that it begins with the Sweeney complaint. It exactly begins with the Sweeney complaint. That's an unverified complaint by a disgruntled or terminated DCJ informant, excuse me, investigator. What's important there is what Sweeney says then. First of all, Sweeney never says anyone in the Bergen County Prosecutor's Office, or specifically Michael McDonough, McDonough, ever divulged the identity of Lugano being a CI to organize crime. Never says that at all. In a state complaint, they take that Sweeney allegation and put another conclusion on it that someone, unnamed person, in the Bergen County Prosecutor's Office must have done it. Now, the Sweeney complaint says that Sweeney's contacts with organized crime tell him organized crime had nothing to do with Lugano's death. Correct. So if you're going to take Sweeney's complaint as the facts that should be truthful, that's it. So you can't pick and choose what you want out of the Sweeney complaint to rely on and what to do with it. Another thing the Sweeney complaint says, Sweeney never says anything about Bergen County ever stealing money. What he says in his complaint is basically saying in violation of proper police procedure, they didn't leave a receipt or an inventory. Never says one thing about ever stealing money. But the estate takes that one conclusion, jumps another conclusion on it, and it was now, it's a theft. But what do we know about that? We know that three search warrants were executed at the same time, and $264,000 in cash was seized from the Lugano. It is two safety deposit boxes and out of his house. No allegation whatsoever that the money figure was wrong. We had a forfeiture complaint filed by the prosecutor's office against that money and others' money seized. No allegations in the answer. The money is returned. Now we have discovery in that case. We have in the appendix, there's a motion for extending discovery in the civil forfeiture case before Judge Clark. No allegation that the money is incorrect. We have eight years later now when they file the initial civil complaint, we have again that conclusion that money's been stolen. We still don't know how much money has allegedly been stolen. And also, too, in their initial brief, they complained about Judge Hochberg considering the civil forfeiture aspect. She should have improperly considered the civil forfeiture answer. Can I ask you, when was the amount of the money forfeited or to be forfeited, when was that known? It was known in the civil. The $264,000 and change. The civil, the verified forfeiture complaint for the money. It contains that figure? Yes. Okay. It's from January 13th, 2005. The answer, Lugano's answer, was filed in March 9th, 2005. I have a question for you on state-created danger. Let's say you had a candidate for governor, right, and, you know, he was campaigning on an anti-crime platform. And it rubbed some people in organized crime the wrong way. And they knew a trooper who was on the detail for this candidate. And they work it out with the trooper that he'll turn around and the guys on the detail will be pulled. The candidate is no longer. Is that, and now you have all the facts. You have the names and whatever. Okay. So in that sense, for the hypothetical's purposes, it's different than what you're saying here. But I just want to know, in that situation, would you agree or disagree that that's a viable state-created danger situation? Perhaps. Because, I mean, I think. What's the flaw? The state-created danger is always. What's the flaw there? Well, it's always a factual content analysis. All the cases I've read on state-created dangers, always keys on the facts. What facts, who did it, what was done, and what's the proximate cause? I'm with you. Okay. My question is, what's the deficiency in the hypothetical I've given you? What, was there harm? The guy's no longer. He was clipped. Okay. I thought no longer was a nice way of saying it. I'm not saying there's not a mechanism of state-created danger that facts somehow could fit into. I mean, Cherry considered that in Cherry v. City of Philadelphia. And also, I think Judge Simandl considered that case in the, I think. So you'd agree that in the scenario that I posed, a claim could at least be viable, yes? Providing we have facts supporting the conclusions. I've given you the facts. I mean, you know. Within the mechanism, yes. Okay. I don't think that's here. That's where I'm going. I don't think that's here because in your case, and also in Cherry's case, counsel may reference to Cherry. Cherry was a district court case for the one thing, and it was also an unpublished district court case. Cherry was also decided before Iqbal, where the district court, before the district court was required to do this kind of analysis of the facts versus conclusions. Now, in that case, the district court allowed the Cherry claim to go forward because they had to accept all the facts assumed as truth. Okay. When it went to summary judgment, the summary judgment after that now goes back to the same district court. The district court basically said these were just all inaccurate facts that were presented, and it had nothing to, no, other than the conclusions, there was no facts to support the Cherry's allegations. In that case, the grant summary judgment, and this court affirmed the grant of summary judgment. So two things. Number one, it shows the importance of the Iqbal analysis when we come to these things, because I submit that if the district court was obligated to do the Iqbal analysis at that point, they would have not let the claim go forward. And number two, even at the time, even with specific allegations in that case, which we don't have in this case, the Cherry, the case did not, was liable. Are we obligated to send this case back because there wasn't a thorough analysis of the Fitchick, that's how you pronounce it, Fitchick factors? No. I think in this state of the law on this issue, and this court has repeatedly held that prosecutors' offices are state agencies in New Jersey. I don't think, you know, the judge was obviously aware of the football analysis. I have not even seen a case going through the football analysis, you know, step by step in a relatively lengthy period of time. This court has already held in the Brittinger case versus Essex County that Essex County is an arm of, Essex County prosecutor's office is an agency of the state entitled to Eleventh Amendment of Purity, immunity, and also held that allegations of mis- But wouldn't it be, in our Coleman case, we said prosecutor's office engaging in classic law enforcement and investigative functions. What your adversary is saying is this isn't that, it's something different. Well, he's alleging misconduct. Right. Right. But Brittinger, I think, even addressed that. It said allegations of misconduct does not waive Eleventh Amendment protection. Yeah, but Fitchick and Coleman are somewhat disparate. And the point is, she didn't apply the Fitchick factors. She, you know, kind of sort of waived that Fitchick, but didn't spell out what the factors are, how they apply, and so forth. Don't we have to remand? I don't think that's necessary. I think Your Honor can just take precedence from other cases that this Third Circuit held where prosecutor's office is held. Because the Fitchick factors don't talk about misconduct or anything like that. It basically just talks about comity and funding and who's going to pay any kind of judgment. You already kind of have that information for you in other cases. So I think you can just take judicial notice of your prior decisions in a prosecutor's cases. Anything more? I'll just rely on the points of my brief on the statute of limitations of the arguments. Thank you, counsel. Thank you, Your Honor. We'll hear the appellant's reply. As an initial matter, the estate contests the conclusion that the district court engaged in an Iqbal analysis. The district court actually did something different and did its own fact-finding. It found that the estate had access to all of Lugano's documents and filings regarding the search and seizure matter.  And it's nowhere, in fact, the contrary is presented in the appendix. The district court found Lugano created his own danger when he voluntarily chose to associate with members of organized crime. That's not alleged. Lugano voluntarily became a confidential informant. That was not alleged. And the conclusion that the BCPO and Mordaga acted within their classic law enforcement function. Again, that wasn't alleged. Our position with regard to state-created danger is that under Iqbal, there's no need, because it's not one of the factors, to allege temporal proximity between the conduct that creates the danger and the harm. Now, that might be something that a court evaluates at summary judgment to decide. Maybe it's so obvious that it doesn't need to go to a jury. But for the most part, maybe this causation argument should go to a jury. But certainly what is clear is that at the pleading stage, that question should not be resolved. The reliance on the Sweeney complaint, hearsay statements, those issues are not relevant to whether the complaint states a claim. This is 12b-6. Maybe they have a Rule 11 issue. Maybe later on Rule 56. But at 12b-6, where we're getting it is not the issue. It's incorrect to assert that Lugano had discovery in the forfeiture case. He had nothing. The entire matter was sealed and remains sealed to the present day. Counsel, I'm afraid your time is up. I'm sorry. Do you want to sum up very quickly? That's it, Your Honor. Thank you. Okay. Thank you, Counsel. Thank you for the excellent briefing and argument. With that being said, we'll take the case under advisement. Clerk, could you adjourn this?